UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS H. PINKERTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0935** |
| **BURL CAIN, WARDEN** | **SECTION "F"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

**I.     Factual Background**

The petitioner, Thomas H. Pinkerton ("Pinkerton"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 4, 1999, Pinkerton was charged by Bill of Information in St. Tammany Parish with one count of aggravated arson and five counts of attempted

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

first degree murder upon Pamela Israel, Nathan Baratini, Van Baratini, Virginia Fos, and Zachary Israel.[3]

The record reflects that Virginia Fos, one of the victims, began living with Pinkerton in November of 1997.[4] In January of 1999, after multiple incidents of domestic violence and physical abuse by Pinkerton, Fos fled St. Tammany Parish to her mother's home in Alexandria, Louisiana, where she hid for eight days. During that time, Pinkerton was seen driving by the homes of Fos's children, Michelle and Van Baratini. On February 3, 1999, Fos returned to St. Tammany Parish to her son Van Baratini's home. Within hours of her return, Pinkerton showed up at the house banging on the door and calling out for Fos. Baratini called 911. A police officer arrived and told Pinkerton to leave. In spite of this, Pinkerton was seen driving past the house twice more that day.

The house was at that time occupied by Fos, Van Baratini, his girlfriend, Pamela Israel, their baby, Nathan Baratini, and Israel's teenage brother, Zachary Israel. That night, at around 3:45 a.m., they were awakened by the sound of breaking glass to find that the house was on fire. The five occupants escaped through a window. As he was exiting the house, Baratini heard the sound of a motorcycle in the street. They also discovered that the tires on their cars had been slashed. The home suffered extensive damage from the fire.

Fos immediately notified her daughter Michelle, and her live-in boyfriend, that she suspected that Pinkerton had burned Van's home and may try to burn her home too. Shortly afterwards, Michelle's boyfriend saw Pinkerton from their window as he rode away on his motorcycle. The couple found that the tires on their cars had been slashed.

---

[3]St. Rec. Vol. 1 of 4, Bill of Information, 3/4/99.

[4]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2000-KA-2827, p.2, 12/19/01.

On May 17, 18, and 19, 2000, Pinkerton was tried before a jury and found guilty as charged on all six counts.[5] At a hearing held July 7, 2000, the Trial Court denied Pinkerton's Motion for New Trial.[6] Pinkerton waived legal delays and the Court sentenced him to serve 20 years for aggravated arson, the first two years to be without benefit of parole, probation or suspension of sentence.[7] The Court also sentenced him to serve 50 years on each of the five attempted first degree murder counts, with the first ten years to be served without benefit of parole, probation or suspension of sentence.[8] The Trial Court ordered the sentences to run concurrently and denied Pinkerton's Motion to Reconsider Sentence.[9]

On direct appeal, Pinkerton's counsel alleged that the evidence was insufficient to support the convictions, the Trial Court erred in allowing evidence of Pinkerton's prior threats against Fos, and the sentences were excessive.[10] On December 19, 2001, the Louisiana First Circuit Court of Appeal found the claims to be without merit and affirmed the convictions and sentences.[11] The Court also denied Pinkerton's request for rehearing on February 21, 2002.[12]

---

[5] St. Rec. Vol. 1 of 4, Trial Minutes, 5/17/00; Trial Minutes, 5/18/00; Trial Minutes, 5/19/00; Jury Verdicts (6 pages), 5/19/00; Trial Transcript, 5/17/00; St. Rec. Vol. 2 of 4, Trial Transcript (continued), 5/17/00; Trial Transcript, 5/18/00; Trial Transcript Vol. II, 5/18/00; St. Rec. Vol. 3 of 4, Trial Transcript Vol. II (continued), 5/18/00; Trial Transcript, 5/19/00.

[6] St. Rec. Vol. 1 of 4, Sentencing Minutes, 7/7/00; Motion for New Trial, 7/7/00; St. Rec. Vol. 3 of 4, Sentencing Transcript, 7/7/00.

[7] St. Rec. Vol. 1 of 4, Sentencing Minutes, 7/7/00; St. Rec. Vol. 3 of 4, Sentencing Transcript, 7/7/00.

[8] *Id.*

[9] *Id.*; Motion to Reconsider Sentence, 7/7/00.

[10] St. Rec. Vol. 4 of 4, 1st Cir. Opinion, 2000-KA-2827, 12/19/01.

[11] *Id.*

[12] *State v. Pinkerton*, 817 So.2d 510 (La. App. 1st Cir. 2002) (Table).

On March 26, 2002, Pinkerton filed a timely[13] Writ Application with the Louisiana Supreme Court.[14] The Court denied the Application without reasons on November 8, 2002.[15]

His conviction became final 90 days later, on February 6, 2003, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.   Procedural Background

Almost seven months later, on September 4, 2003, Pinkerton signed a Uniform Application for Post Conviction Relief which was filed in the Trial Court on September 8, 2003.[16] Pinkerton raised four claims: (1) prosecutorial misconduct where the prosecutor commented on the credibility of witnesses and gave opinion as to their truthfulness; (2) he was denied the right to testify at trial; (3) double jeopardy; and (4) ineffective assistance of counsel where counsel (a) gave no opening statement, (b) failed to object to the prosecution's closing arguments regarding the credibility of the witnesses, (c) failed to let him testify, (d) failed to object to the Bill of Information on double jeopardy grounds, and (e) failed to investigate, prepare or present a defense.

---

[13]La. S.Ct. R. X§5provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment or denial of rehearing. See *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A). In this case, the thirtieth day fell on Saturday, March 23, 2002. Under Louisiana law, the deadline extended to the next business day, Monday, March 25, 2002, which is the date on which Pinkerton's attorney mailed the pleading. The Court should consider this Writ Application timely.

[14]St. Rec. Vol. 4 of 4, La. S. Ct. Letter, 2002-K-890, 3/27/02 (showing post mark of 3/25/02 and file date of 3/26/02).

[15]*State v. Pinkerton*, 828 So.2d 1108 (La. 2002); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2002-K-0890, 11/8/02.

[16]St. Rec. Vol. 4 of 4, Uniform Application for Post Conviction Relief, 9/8/03 (signed 9/4/03). Pinkerton's signature date is presumed to be the earliest date on which he could have presented it to prison officials for mailing to the court under any applicable state mailbox rule. *See Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006); *Marshall*, 155 Fed. Appx. at 769.

The Trial Court dismissed the Application on October 6, 2003.[17] The Louisiana First Circuit denied Pinkerton's subsequent Writ Application without reasons on February 9, 2004.[18]

Pinkerton thereafter submitted an untimely Writ Application with the Louisiana Supreme Court, signed by him on March 17, 2004 and filed on April 2, 2004.[19] On March 11, 2005, the Louisiana Supreme Court denied the Application without reasons.[20]

**III.    Federal Petition**

On February 23, 2006, Pinkerton filed a Petition for Federal Habeas Corpus Relief in which he alleged the following grounds for relief:[21] (1) prosecutorial misconduct where the prosecutor vouched for the credibility of his witnesses and gave opinion as to their truthfulness; (2) he was denied the right to testify at trial; (3) double jeopardy arising from the related charges in the Bill of Information; (4) ineffective assistance of counsel where counsel (a) gave no opening statement, (b) failed to object to the prosecutions closing arguments regarding the credibility of the witnesses, (c) failed to let him testify, (d) failed to object to the Bill of Information on double jeopardy grounds, and (e) failed to investigate, prepare or present a defense; (5) the Trial Court erred in admitting evidence of Pinkerton's prior threats against Fos; and (6) insufficient evidence to support the verdict.

---

[17] St. Rec. Vol. 4 of 4, Judgement, 10/6/03.

[18] St. Rec Vol. 4 of 4, Copy of 1st Cir. Writ Application, 11/5/03; 1st Cir. Order, 2003-KW-2484, 2/9/04.

[19] As discussed above, under La. S.Ct. R. X§5, an application to that court must be filed or postmarked within 30 days of the issuance of the appellate court's judgment. *See Marshall*, 155 Fed. Appx. at 769; *see also* La. Code Crim. Proc. art. 922(A). Pinkerton signed this Writ Application on March 17, 2004, which is the earliest date he could have submitted it to prison officials for mailing. St. Rec. Vol. 4 of 4, Copy of La. S.Ct. Writ Application, signed 3/17/05. In fact, the pleading was metered for mailing on March 17, 2004. St. Rec. Vol. 4 of 4, La. S. Ct. Letter, 2004-KH-848, 4/2/04 (showing meter date of 3/17/04). The Writ Application was filed in the Louisiana Supreme Court on April 2, 2004. *Id*. Both dates are outside of the 30 day time period allowed under La. S. Ct. Rule X§5.

[20] *State ex rel. Pinkerton v. State*, 896 So.2d 57 (La. 2005); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-0848, 3/11/05.

[21] Rec. Doc. No. 1.

5

The State filed an opposition memorandum alleging that the petition was not timely filed, and, alternatively, the claims are without merit.[22] Pinkerton responded arguing that his petition was timely after applying the tolling doctrine to his state post conviction filings.[23] Pinkerton based his argument on the erroneous representation that his last Louisiana Supreme Court Writ Application was denied on November 11, 2005, when in fact it was denied on March 11, 2005.

## IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to Pinkerton's petition, which is deemed filed in this court under the federal mailbox rule on January 17, 2006.[25] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

---

[22]Rec. Doc. No. 9.

[23]Rec. Doc. No. 10.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pinkerton's federal habeas petition on February 23, 2006. Pinkerton dated his signature on the petition on January 17, 2006. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has raised the defense that Pinkerton's petition was not timely filed.

## V.  Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[26] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As set forth above, Pinkerton's conviction became final on February 6, 2003. Under the plain language of § 2244, he had until February 6, 2004, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Pinkerton's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such

---

[26] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
- A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
- B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
- C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
- D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Pinkerton's AEDPA filing period began to run on February 7, 2003, the day after his conviction became final. The filing period ran uninterrupted for 209, until September 4, 2003, when Pinkerton signed a Uniform Application for Post Conviction Relief, which was filed in the Trial Court on September 8, 2003. The Application remained pending, and the federal filing period was tolled, until March 10, 2004, which was 30 days (the period he had to seek further review) after the Louisiana First Circuit denied the subsequent Writ Application.

The AEDPA filing period began to run again on March 11, 2004, and did so without interruption for the remaining 156 days, until August 13, 2004, when it expired. Pinkerton had no properly filed state application for post conviction relief or other collateral review pending during that time period. Pinkerton's federal petition is deemed filed on January 17, 2006, which was almost two and one-half years after the AEDPA filing period expired.

The Court is aware that Pinkerton submitted a Writ Application to the Louisiana Supreme Court during the period calculated above. The Application, however, was not timely under La. S. Ct. Rule X§5, and therefore was not properly filed for tolling purposes.[27] La. S.Ct. R. X§5 provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See Causey*, 450 F.3d at 604-05; *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); *see also* La. Code Crim. Proc. art. 922(A).

In this case, the Louisiana First Circuit issued its ruling on February 9, 2004. The Writ Application at issue was signed by Pinkerton on March 17, 2004, metered for mailing on March 17, 2004, and filed by the Louisiana Supreme Court on April 2, 2004. For purposes of applying the state

---

[27]*See*, Footnote 19, *supra*.

mailbox rule, March 17, 2004, the date Pinkerton signed the pleading, is considered the earliest date on which he could have presented it to prison officials for mailing. Nevertheless, each of these dates are outside of the 30-day time limit allowed for under La. S. Ct. Rule X§5. The Application was not properly filed and cannot be considered in the statutory tolling calculation.

Nevertheless, even if a reviewing Court were to afford Pinkerton tolling for the pendency of the 2004 Louisiana Supreme Court Writ Application, his federal petition is still untimely. Under this alternative calculation, Pinkerton's AEDPA filing period would begin to run as above on February 7, 2003, the day after his conviction became final. The filing period would run uninterrupted for 209 days, until September 4, 2003, when Pinkerton signed his Uniform Application for Post Conviction Relief, which was filed in the Trial Court on September 8, 2003. The Application would remain pending, and the federal filing period tolled, until March 10, 2004, which includes the 30 days he had to seek review after the Louisiana First Circuit denied the Writ Application to that Court.

The AEDPA filing period would begin to run the next day, March 11, 2004, for six additional days, until March 17, 2004, when Pinkerton signed the untimely Louisiana Supreme Court Writ Application and presumably presented it for mailing. The Writ Application would remain pending until March 11, 2005, when it was denied by the Louisiana Supreme Court. The AEDPA filing period would begin to run again on March 12, 2005, and would do so for the remaining 150 days, until August 8, 2005, when it expired.

Once again, this date falls well before the January 17, 2006, the date on which Pinkerton is deemed to have filed his federal habeas corpus petition. Thus, under this alternative calculation, Pinkerton's federal filing period would have expired on August 8, 2005, which was five months

before he is deemed to have filed this federal petition. Even affording Pinkerton this generous calculation, his petition is still untimely filed under the AEDPA.

Therefore, under either calculation, Pinkerton's federal petition is deemed filed on January 17, 2006, well after the expiration of the AEDPA filing period, and must be dismissed as untimely.[28]

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Thomas H. Pinkerton's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this  12th  day of  June , 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] Pinkerton has not alleged and the record does not reflect the type of extraordinary circumstances which would warrant equitable tolling. The Court also notes that the deadlines in this case under either calculation expired before the suspension of deadlines and time periods instituted by this Court in the aftermath of Hurricane Katrina, which struck this area on August 29, 2005. Therefore, the disruptions caused by the hurricane are irrelevant to the AEDPA timeliness calculation in this case. His petition should therefore be dismissed as time barred under the AEDPA.